## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

|  |  |
|---|---|
| **ELI REISMAN**, *individually, and on behalf of himself and all others similarly situated*,<br><br>          Plaintiff,<br><br>     v.<br><br>**GEN DIGITAL, INC.**,<br><br>          Defendant. | Civil Case No.: _____<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This action arises out of the illegal marketing practices of Defendant Gen Digital, Inc. ("Gen Digital" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.      Gen Digital operates a family of brands, including but not limited to Norton, Avast, LifeLock, Avira, AVG, ReputationDefender and CCleaner, that purport to provide products and services relating to cybersecurity, privacy, and identity protection.[1]

3.      As of March 29, 2024, Gen Digital has "approximately 500 million total users, which come from direct, indirect and freemium channels."[2]

4.      Gen Digital relies on third-party affiliate marketing to refer prospective customers to Gen Digital.[3]

5.      Gen Digital's affiliate partners send illegal telemarketing text messages on behalf of Gen Digital to Plaintiff's and Class members' residential cell phones.

---

[1] *See* Gen Digital Inc. Annual 10-K Report (May 16, 2024) available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/849399/000084939924000036/gen-20240329.htm
[2] *Id.*
[3] *See id.*

1

6.      Gen Digital's affiliate partners continue to send illegal telemarketing text messages even after Gen Digital receives requests from the called/texted party requesting that Gen Digital stop sending its text messages.

7.      Accordingly, Plaintiff brings this action on behalf of himself and a Class of similarly situated individuals.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9.      This Court has jurisdiction over Gen Digital because Gen Digital conducts business transactions in this District and was responsible for sending text messages into this District targeting residents of this District as part of the business it conducts in this District.

10.     Specifically, Gen Digital and its affiliate partners targeted a resident of this District whose cellular telephone number has an area code (*i.e.*, 848) that is associated with this District— confirming that Gen Digital *knew* it was calling into this District.

11.     Venue is proper in this District because Gen Digital and its affiliate partners targeted a resident of this District and called/texted into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

12.     Plaintiff Eli Reisman ("Mr. Reisman" or "Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Edison, New Jersey.

13.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.     Gen Digital is, and at all times mentioned herein was, a corporation organized and

existing under the laws of the state of Delaware with a principal office address located at 60 E. Rio

Salado Parkway, Suite 1000, Tempe, Arizona 85281.

15.    Gen Digital may be served via its registered agent, Corporation Service Company

located at 251 Little Falls Drive, Wilmington, Delaware 19808.

16.    Gen Digital is, and at all times mentioned herein was, a "person" as defined by 47

U.S.C. § 153(39).

## TCPA BACKGROUND

17.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because

"telemarketers [could] evade [state-law] prohibitions through interstate operations." *Mims v.

Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

### *National Do-Not-Call Registry*

18.    The TCPA establishes a national "do not call" database of numbers not to be called.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of

1991*, 18 FCC Rcd. 14014 ("DNC Order").

19.    These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1)-(2).

20.    Specifically, a company may not initiate any "telephone solicitation" to a telephone

subscriber "who has registered his or her telephone number on the national do-not-call registry of

persons who do not wish to receive telephone solicitations that is maintained by the Federal

Government." 47 C.F.R. § 64.1200(c)(2).

21.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500

per call, pursuant to § 227(c) of the TCPA.

3

*Internal Do Not Call Regulations*

22.    The TCPA also required the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

23.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id.* at §  227(c)(1)(A), (E).

24.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

25.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

26.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

27.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

28.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the

existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1), (2), (3), (6).

29.    These regulations prohibit a company from making calls for telemarketing purposes[4] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

30.    Accordingly, all telemarketing calls violate the TCPA, unless Gen Digital can demonstrate that it has implemented the required policies and procedures.

31.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c) of the TCPA:

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

32.    A company must comply with the procedures for the company-specific do-not-call list. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

33.    Though some of these requirements mention "residential" telephones, they were all

---

[4] There is a distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication." 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes," on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the National Do-Not-Call Registry provisions with respect to persons with whom it does not have an existing established business relationship.

extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

34.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g.*, *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

35.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

36.     Finally, text messages, such as the ones sent by Gen Digital, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

37.     Plaintiff is the user of his personal cellular telephone number (848)-XXX-0570.

38.     Plaintiff's cellular telephone number has been registered on the National Do-Not-

Call Registry since July 19, 2023.

39.     Plaintiff registered his telephone number on the National Do-Not-Call Registry because he did not want unsolicited telemarketing calls and text messages, such as the ones at issue in this case.

40.     On or about October 16, 2023, as shown below, Plaintiff began receiving telemarketing text messages from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



41.     The message appeared to come from telephone number (514) 589-0816.[5]

42.     The message included a link, that when clicked directed Plaintiff's telephone browser to Avast.com, a website operated by Gen Digital:



43.     The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from Avast.

44.     Upon information and belief, the full uniform resource locator (URL) includes information sufficient for Gen Digital to identify the particular partner affiliate that sent the

---

[5]  Upon information and belief, all of the telephone numbers identified on Plaintiff's and Class members' caller IDs were "spoofed" to conceal the identity of the caller. "Spoofing occurs when caller ID information is manipulated or altered to display anything other than the originating telephone number. The Truth in Caller ID Act of 2009 and the Commission rules prohibit any individual from falsifying or misrepresenting his or her caller ID information with the intent to defraud, cause harm, or wrongfully obtain anything of value." *In the Matter of Affordable Enterprises of Arizona, LLC.*, 35 F.C.C. Rcd. 12142, 12142 (2020).

message on Gen Digital's behalf.  The complete URL for this text message is as follows:

> https://www.avast.com/en-us/lp-aff-consumer-business-store-page-inf709?irclickid=TCGyI00TpxyPWbPUtF1bfymMUkFTi2WAvwwnyA0&irgwc=1&utm_medium=affiliate&utm_source=impact&utm_campaign=18249&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFTi2WAvwwnyA0&utm_content=1585188&IRID=2462623&programType=Impact&TrafficSource=Affiliate&partnerID=2462623#android

45.    Upon information and belief, Gen Digital uses the information contained within the URL to determine and track where customers came from so that Gen Digital can credit its partner affiliates with a commission for driving potential customers to its website.

46.    Plaintiff investigated the message to determine if it was a scam or was in fact a marketing campaign run by Gen Digital.

47.    On October 18, 2023, Plaintiff contacted Gen Digital to bring the matter to Gen Digital's attention, and Plaintiff advised that the message was unwanted, upsetting, and deceptive.

48.    On October 23, 2023, Plaintiff received a response from Gen Digital's litigation counsel.

49.    Gen Digital's litigation counsel confirmed that, "[i]n all likelihood, the text was sent by a third-party marketing affiliate which itself had access to your phone number."

50.    Gen Digital's litigation counsel advised that "[w]hile this is not common, it has happened before . . . ."

51.    Plaintiff informed Gen Digital's litigation counsel that he believed he received multiple unwanted messages from the same affiliate partner, despite instructing that affiliate partner to stop sending him unwanted messages.

52.    Upon information and belief, despite receiving Plaintiff's complaints, Gen Digital took no action to contact its affiliate partners and instruct them not to send unsolicited text messages to individuals, including Plaintiff and other individuals who requested no further text

messages.

53.    Upon information and belief, Gen Digital took no action because it was in Gen Digital's financial interest to ignore the illegal activity.

54.    On October 25, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



55.    When Plaintiff clicked the link, it directed his browser to a website advertising a Norton product:[6]

---

[6] The website URL is as follow:
https://berylliumreporters.xyz/ht/atv3/v4/?oid=2240&dom=urbstchoice.com&lpkey=167598e927f6566288&uclick=1ma7k29l&uclickhash=1ma7k29l-1ma7k29l-168wbl-xsikdz-hea63y-hea0g6-hea09z-c7de5d#!/index



56.    Norton is one of Gen Digital's brands.

57.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from Norton.

58.    When Plaintiff clicked on the "Start Clean" button, he was directed to a Norton webpage to buy one of Defendant's products:[7]

---

[7] https://buy.norton.com/estore/checkOutV2/CartV3/true



59.     On October 27, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



60.    When Plaintiff clicked the link, it directed his browser to a website advertising a

Norton product:[8]



61.    The message was deceptive in nature and purported to make claims about Plaintiff's

device needing protection from Norton.

62.    When Plaintiff clicked on the "Repair Now" button, he was directed to a Norton

webpage to buy one of Defendant's products:[9]

---

[8] The website URL is as follows:
https://specialgivaways.com/av/norton/v1/?cep=0JXchs2gxlVe7UMB3IGq6PtuuN2-
_63Or47MLYk_7bRwh3mmQZ118cTUEwxDRrua3MdCSzIcBMdinGu5PMeD6FP7HEr36rv7RHnnmM
8C9rndO67BjqHwMhx3fRikbu4WUqlpuAUvphr0Vgvse3k_K9RKrBeqIZ_Ha_uXFvzsqjlhlIjVHn8rvsh
Kik8lLrOgyAb1eOjH8u39I79ljJFLFyrjmuRwUHzRJRMEirhybuykBiQVLVFYL94gGVYqPPPRoazGW
8v1F3mLkmCDtPF0u_LIhVAsCQbZo74w2-
foQ_8GmntPCkVI4Atak8cVjHthRvhABG2YXfdGI6Gb0fq8C51LdmYYWn0z6vV1hoQHU-
5spA6sI7XqDozWvEwtcTsshnoHfHEh2IjMfu25H4AYBokv8Bfo4OyH_rfRSIHcq3SsU9eGQyX3mzhp
Q78bI7B-Cc99DuOiwxdvmmwt0jP6_g&lptoken=16d3983f832f9395495f&target=ts3859-sms-av-
us&cpv=0.29&externalid=1698837548.498893-203110817-86965#!/hst
[9] https://buy.norton.com/estore/checkOutV2/CartV3/true



63.     On November 1, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



64. When Plaintiff clicked the link, it directed his browser to a website advertising an AVG product:[10]



65. AVG is one of Gen Digital's brands.

66. When Plaintiff clicked the "Protect Now" button, Plaintiff was directed to an AVG

---

[10] The website URL is as follows:
https://lifetricksdaily.com/vpn/v6/index.php?cep=_040kEzZjNQvQMVX1I_ZzAFJ9vBdo0JzlamPOrDL
UFBw8u7HSYH8YMWswLKf6xY6LVYBQHkSs1qU3VXjxEmgyfOANcMiOUtq7bfyMzuWkZAXQuI
8GTvu2OgIc0zjxv7xsyd_MXyc4JuQHFKa6VZiTAgfTAPuhwvvKm7O1LjPvmRADwkgdfNvXAi6QEZ
lIq0bndZASsrcqyJmBO8ZiFNMuH3PyGJUwKLHropXWyCZzLsDFgqfxJBjBgUVR3wZnP7HVaxT2Y
-IGcgpvTiZKhZzaD8WG54RF8DeSbIW0H5fHTfE_M86HIm4O9ypNPCmideZkq31wXSb4vFeDuh9-
YXHWiKLvsjt5fUj9mNYybPje4RPozBBT9M64FCEnMAra2GLwGegyW6e8bn86Iwc9lAB7hRu594H
MLaC8cL5UVG_BM76eK-
Qiw0Ec08kfhQzeftMkYcR40jDFwAnwtANcCEvTQ&lptoken=16f0989d8386942e07e2&target=ts3859-
sms-av-us&cpv=0.29&externalid=1698837607.225972-203110817-87173

webpage to buy one of Defendant's products:[11]



67.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from AVG.

68.    Upon information and belief, the URLs utilized by Gen Digital and its affiliates track the source of the traffic and the affiliate who sent the messages.

69.    On November 3, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:

---

[11] https://www.avg.com/en-us/affiliate-homepage-close?utm_campaign=70771&programType=Impact&clickID=TCGyI00TpxyPWbPUtF1bfymMUkFQpx35wQyVQQ0&TrafficSource=Affiliate&partnerID=70771&irclickid=TCGyI00TpxyPWbPUtF1bfymMUkFQpx35wQyVQQ0&irgwc=1&utm_medium=affiliate&utm_source=impact&utm_content=1617068



70.    When Plaintiff clicked the link, it directed his browser to a website[12] that stated he

visited "infected websites" and provided a button to click to scan his device:

---

[12] The website URL is as follows: https://iso.panchorotno.com/landers/asdapdd/dyn/index.php?lang=en-US&clickid=228ebtlqexsbz9ee&domain=arimabusiness2.com&device=Unknown&device_model=Android%202.0&lpkey=160e99a9010a484f28&browser_name=Chrome%20Mobile&device_brand=Generic&os_name=Android&uclick=tlqexsbz&uclickhash=tlqexsbz-tlqexsbz-16c8-q5du-7vtl-qna2-qn5m-3c5cda#!#



71.    When Plaintiff clicked on the "Scan" button, he was directed to a Norton webpage[13]

to buy one of Defendant's products:

---

[13] https://us.norton.com/products/mobile-security-for-android?irgwc=1&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFQLdW5wQyVQQ0&adid=912373&IRID=312695&source=ir&sharedid=11332_3408&sid=11332_3408





72.     The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from Norton.

73.     On November 7, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



74. When Plaintiff clicked the link, it directed his browser to a website[14] advertising a Norton product:

---

[14] The website URL is as follows:

https://berylliumreporters.xyz/ht/atv2/v4/?oid=2240&dom=urbstchoice.com&lpkey=163999cd395036e569&uclick=1mpmuoa5&uclickhash=1mpmuoa5-1mpmuoa5-168w8n-xsik8n-hea6bl-hea0zw-hea0uq-19736a#!/index



75.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing repair from Norton.

76.    When Plaintiff clicked on the "Repair Now" button, he was directed to a Norton webpage[15] to buy one of Defendant's products:

---

[15] The website URL is as follows:

https://us.norton.com/store?irgwc=1&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFV24zgvwwn1A0&ad id=1248407&IRID=70771&source=ir&sharedid=11696_t2fe&sid=11696_t2fe&expid=NLLTWO&prom ocode=NLLTWO





77.    On November 30, 2023, as shown below, Plaintiff received another telemarketing

text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



78.    When Plaintiff clicked the link, it directed his browser to a website[16] advertising a

Norton product:

---

[16] The website URL is as follows:

https://newstufftoday.com/av/norton/v1/?cep=cAMnY03vExudLq3Tpk-S07x-
ySTTc8wC5XU69KZ8YOAmK62F7mCQxkFz7dOE7OxukIbpMRWMB3YGALLQtFjPH_O-I9E-
t1EbZo8QVM-JkZ2aJeJqdBo4DlJFU-ecg2_sTB13yr6nVheafRj4LMoiRrEUhz1AzROkN9IDmCbhp-
LHBdv5QZX0dW3FfVBwtBUPfAjZ7JgAx-_prFKchPjGXJlKaTTm6-
mrfLI8V2A4aWcnWTVY0_La6wK42l5VmM_JIootCrpBXlpAdq0F2N3dpG6igAqZMHtvHQbCu3jdRJ
4slaA0V_BuIQpleLD_jNPa9VANYZ-BgibMtyChXPmwLcibf3ZNy6TsinmiDTsOxCom_QwqQX5N-
Tk3usRHzW7fd1KfdzlhZ0XUJthAboJh2_qzTa0hvUoB1KeMWJjQA3VngeKTqOi_gLUARybfMzlvzVa
x6mAcGzoP5y0ruODxcA&lptoken=175b011137bc85d853ed&target=ts3859-sms-av-
us&cpv=0.35&externalid=1701376752.022075-203110817-86965#!/hst

23



79.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing repair from Norton.

80.    When Plaintiff clicked on the "Repair Now" button, he was directed to a Norton webpage[17] to buy one of Defendant's products:

---

[17]  https://buy.norton.com/estore/checkOutV2/CartV3/true



81.     On December 9, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



82.    When Plaintiff clicked the link, it directed his browser to a website[18] advertising an

AVG product:

[18] The website URL is as follows:
https://letcelebratenow.com/av/avg/v1/?cep=p10pr0YT1a_xFZZ50MQ2gq72cil_ISaXj4yFMgA-
wUaprDo3tcnxL5QimrtLgiqDQrhFr6EFneK82f0ZU1JhaZkybfKXUfqGbwqsRFJNnh0YvJbI0ziYxzAN8
9uDEtEfq3te6mNcW_Yy_kn4a3vECICNIBBAEUQIy6eLFakbwXthFa65OtO9e7rIIzFBAzypCA8GXqK
bOw9dnNLEnDVg4Ghema1kosZit_MEH53W8pLEQKLFjZMlzUJt4RGYOKIEfmCd1uOX5Pn2BibdC
gWCb9VqxK_IUkSVIQWjJdr6xiFyDIT6hocgKzB5ErGTaDwJ8rWrF-e4t689UU7eomQAUy-
yW3Tli4tnDXCnGZQRuNJjJJ8hQ7WUFUjzD9qFBGiySf34ciSiQjFdxZ1i7Lt72dqNhK87_BkkmaypBT
1XH9VpqhyIF4A_artYdZdovnoqoCQ8B_8QJegfIKcsgjMj7w&lptoken=179d023a17af50404187&target
=ts3859-sms-av-us&cpv=0.41&externalid=1702173241.154218-203110817-87173



83.    The message was deceptive in nature and purported to make claims about Plaintiff's

device being infected.

84.    When Plaintiff clicked on the "Proceed" button, he was directed to an AVG

webpage[19] to buy one of Defendant's products:

---

[19] https://www.avg.com/en-us/affiliate-homepage-
20?utm_content=1617068&utm_campaign=70771&utm_source=impact&clickID=TCGyI00TpxyPWbP
UtF1bfymMUkFSIq1xwQyVQQ0&TrafficSource=Affiliate&partnerID=70771&programType=Impact&i
rgwc=1&irclickid=TCGyI00TpxyPWbPUtF1bfymMUkFSIq1xwQyVQQ0&utm_medium=affiliate#andr
oid





85.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from AVG.

86.    On December 13, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



87.     When Plaintiff clicked the link, it directed his browser to a website[20] advertising a

Norton product:



---

[20] The website URL is as follows: https://www.lifethedec.autos/l/17ad02c8554299d265

88.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing scanning from Norton.

89.    When Plaintiff clicked on the "Scan Now" button, he was directed to a Norton webpage[21] to buy one of Defendant's products:



90.    Plaintiff did not provide prior express invitation or permission or consent for the text messages he received.

91.    To the extent Gen Digital had *any* consent to call or text Plaintiff—which it did

---

[21] https://us.norton.com/promo/affiliate/products-norton-360-deluxe-nlltwo?irgwc=1&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFS-413IzLDTo0&adid=1494629&IRID=3094156&source=ir&sharedid=3100&sid=3100

not—Plaintiff revoked that consent by informing Gen Digital that he did not wish to receive these messages at least as early as October 18, 2023, when he complained about the illegal texting campaign to Gen Digital and Gen Digital's litigation counsel.

92.     Gen Digital's violations were willful and knowing, or its actions and omissions were, at a minimum, negligent.

93.     Plaintiff and Class members were damaged by Gen Digital's actions and omissions alleged herein. In addition to wasting their cellular data, storage, and battery life, Gen Digital committed an invasion of privacy, causing Plaintiff and Class members aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls and text messages.  Plaintiff's and Class members' privacy was unlawfully invaded, Gen Digital's text messages temporarily seized and trespassed upon the use of their phones, and Plaintiff and Class members were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted text messages.  Gen Digital's telephone calls were annoying and a nuisance and wasted the time of Plaintiff and Class members. *See, e.g.*, *Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to telemarketing calls).

## <u>GEN DIGITAL'S LIABILITY</u>

94.     Gen Digital or a third-party affiliate partner acting on Gen Digital's behalf sent two or more telephone solicitations in a 12-month period to Plaintiff and Class members, whose numbers were on the National Do-Not-Call Registry at the time of the text messages and for 31 days prior to the text messages, in violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

95.     Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff and Class members are entitled to $500 per call, pursuant to 47 U.S.C. § 227(c).  Plaintiff and Class members are

entitled to up to $1,500 per call if Gen Digital's actions are found to be knowing or willful.

96.    In addition, Gen Digital or a third-party affiliate partner acting on Gen Digital's behalf made two or more telemarketing calls to Plaintiff and Class members despite not having in place the required policies and procedures prior to making such calls—as evidenced by Gen Digital's failure to stop texting Plaintiff when he requested.  This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

97.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff and Class members are entitled to an additional $500 per call, pursuant to 47 U.S.C. § 227(c).  Plaintiff and Class members are entitled to up to $1,500 per call if Gen Digital's actions are found to be knowing or willful.

98.    Gen Digital, directly, individually, jointly, and/or in concert with its third-party affiliates, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

99.    To the extent Gen Digital outsourced its illegal texting campaigns to its third party affiliates, it is vicariously liable for calls that violate the TCPA.

100.    Gen Digital is liable for third-parties' actions because it took steps to cause the texts to be sent, and because the texts were sent pursuant to Gen Digital's actual authority, apparent authority and/or ratification.

101.    On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief.  As the FTC noted, because [s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling), 28 FCC Rcd at 6588 (¶37)* (internal citations omitted).

102.    Moreover, the *FCC 2013 Ruling* rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call.  *Id.* at 6587 n. 107.

103.    As Gen Digital's annual report makes clear, Gen Digital conducts advertising itself and through its third-party affiliate partners:

> As of March 29, 2024, we have approximately 500 million total users, which come from direct, indirect and freemium channels. Of these total users, we have approximately 65 million paid cyber safety customers including over 39 million direct customers with whom we have a direct billing relationship.
>
> •**Direct-to-consumer channel:** We use advertising to elevate our family of brands, attract new customers and generate significant demand for our services. Our direct subscriptions are primarily sold through our e-commerce platform and mobile apps, and we have a direct billing relationship with the majority of these customers.
>
> •**Indirect partner distribution channels:** We use strategic and affiliate partner distribution channels to refer prospective customers to us and expand our reach to our partners' and affiliates' customer bases. We developed and implemented a global partner sales

organization that targets new, as well as existing, partners to enhance our partner distribution channels. These channels include retailers, telecom service providers, hardware OEMs, employee benefit providers, strategic partners, and small offices, home offices and very small businesses. Physical retail and OEM partners represent a small portion of our distribution, which minimizes the impact of supply chain disruptions.[22]

104.    In addition, Gen Digital's litigation counsel represented directly to Plaintiff that Gen Digital's third-party affiliate marketers likely sent the messages at issue and that Gen Digital was aware that its affiliates were also sending unwanted text messages to other consumers.

## CLASS ACTION ALLEGATIONS

105.    Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed classes (collectively, the "Class"), defined as follows:

> **National Do-Not-Call Class**:  Plaintiff and all persons within the United States to whose telephone number Gen Digital placed (or had placed on its behalf) two or more telephone solicitation calls or text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for 31 days or more at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

> **Internal Do-Not-Call Class**:  Plaintiff and all persons within the United States to whose telephone number Gen Digital placed (or had placed on its behalf) two or more telemarketing calls or text messages in a 12-month period, including at least one after the person requested that the calls or messages stop, from four years prior to the filing of the Complaint through class certification.

106.    Excluded from the Class are Gen Digital and any entities in which Gen Digital has a controlling interest; Gen Digital's agents and employees; any Judge and Magistrate Judge to

---

[22] Gen Digital Inc., Form 10-K (Mar. 29, 2024), available at
https://www.sec.gov/ix?doc=/Archives/edgar/data/849399/000084939924000036/gen-20240329.htm

whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

107.    The members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class is comprised of hundreds, if not thousands, of individuals. This is based, in part, on the fact that Gen Digital has approximately 500 million total users, which come from direct, indirect and freemium channels.

108.    Gen Digital's records and records kept by its affiliates will reveal the precise number of Class members.

109.    The exact number and identities of the people within the Class are ascertainable in that Gen Digital and/or third parties maintain written and electronically stored data showing:

    a.    The time period(s) during which Gen Digital or its agent(s) sent the text messages at issue;

    b.    The telephone numbers to which Gen Digital or its agent(s) sent the text messages at issue;

    c.    The telephone numbers for which Gen Digital had prior express written consent;

    d.    The telephone numbers that replied to Gen Digital's text messages with a message communicating a desire that Gen Digital stop sending text messages;

    e.    The purposes of such text messages; and

    f.    The names and addresses of Class members.

110.    There are common questions of law and fact affecting the rights of the members of the Class, including, *inter alia*, the following:

a.      Whether Gen Digital (or someone acting on its behalf) sends telemarketing text messages;

b.      Whether Gen Digital (or someone acting on its behalf) obtains prior express written consent to send text messages;

c.      Whether Gen Digital or the entities with which they contract send solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

d.      Whether Gen Digital had the required policies and procedures prior to sending telemarketing text messages;

e.      Whether Gen Digital honors do-not-call requests;

f.      Whether Gen Digital's statutory violations were willful and knowing; and

g.      Whether Gen Digital should be enjoined from engaging in such conduct in the future.

111.    Plaintiff is a member of the Class in that Gen Digital sent two or more texts for telemarketing purposes, in a one-year period to his telephone number, after he asked Gen Digital to stop and while his phone number was registered on the National Do-Not-Call Registry.

112.    Plaintiff's claims are typical of the claims of the members of the Class in that they arise from Gen Digital's uniform conduct and are based on the same legal theories as these claims.

113.    Plaintiff and all Class members have also necessarily suffered concrete harm in addition to statutory damages, as they all spent time tending to Gen Digital's unwanted calls and suffered a nuisance and an invasion of their privacy.

114.    Plaintiff has no interests antagonistic to, or in conflict with, the Class members.

115.    Plaintiff is an adequate representative of the Class and will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class.  Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a Class representative.

116.    Gen Digital has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

117.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

118.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class member make individual actions uneconomical.

119.    Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the National Do-Not-Call Class)**

120.    Plaintiff repeats and realleges the allegations in paragraphs 1-119 as if fully set forth herein.

121.    Gen Digital made, or had made on its behalf, telephone solicitations to Plaintiff and National Do-Not-Call Class members' telephone numbers.

122.    Plaintiff's and National Do-Not-Call Class members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

123.    Plaintiff and National Do-Not-Call Class members each received two or more such calls in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for 31 days or more at the time of the calls/texts.

124.    Plaintiff and National Do-Not-Call Class members are entitled to an award of $500 in statutory damages for each telephone solicitation call, pursuant to 47 U.S.C. § 227(c)(5).

125.    Plaintiff and National Do-Not-Call Class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Internal Do-Not-Call Class)**

126.    Plaintiff repeats and realleges the allegations in paragraphs 1-119 as if fully set forth herein.

127.    Gen Digital sent numerous text messages for telemarketing purposes to Plaintiff's and Internal Do-Not-Call Class members' telephone numbers.

128.    Gen Digital did so because it did not have a written policy pertaining to "do not call" or stop requests.

129.    Gen Digital did not train its personnel on the existence or use of any internal "do not call" list or policy.

130.    Gen Digital did not record or honor "do not call" or stop requests.

131.    Gen Digital sent two or more telemarketing text messages to Plaintiff and Internal Do-Not-Call Class members' telephone numbers in a 12-month period.

132.    Plaintiff and Internal Do-Not-Call Class members are entitled to an award of $500 in statutory damages per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

133.    Plaintiff and Internal Do-Not-Call Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    An order certifying the Class as defined above, appointing Plaintiff as the Class Representative and his counsel as Class Counsel;

B.    An order declaring that Gen Digital's actions, as set out above, violate the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Gen Digital from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.    An award of treble damages;

F.    An award of reasonable attorneys' fees and costs; and

G.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** February 18, 2025

Plaintiff ELI REISMAN, *individually, and on behalf of himself and all others similarly situated,*

By:  */s/ Max S. Morgan_____*
     Max S. Morgan, Esquire
     **THE WEITZ FIRM, LLC**
     1515 Market Street, #1100

39

Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Zimmerman Law Offices, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
(*pro hac vice* application forthcoming)

Counsel for Plaintiff and the Class